UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MADELINE RAMOS,                                     :

                Plaintiff,                    :

      -against-                                :          **REPORT AND RECOMMENDATION**

COMMISSIONER OF SOCIAL SECURITY, :                      19-CV-10616 (AT) (KNF)

              Defendant.           :
-----------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE

## BACKGROUND

On April 15, 2016, Madeline Ramos ("Ramos") applied for disability benefits alleging a disability onset date of June 29, 2015. On November 15, 2019, Ramos commenced this action against the Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") October 30, 2018 decision finding her ineligible for disability insurance benefits ("DIB"), pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-43, and Supplemental Security Income benefits ("SSI"), pursuant to Title XVI of the SSA, 42 U.S.C. §§ 1381-1385. The ALJ found that Ramos: (1) meets the insured status requirements of SSA through September 30, 2020; (2) has not engaged in substantial gainful activity since June 29, 2015, the alleged onset date; (3) "has the following severe impairments: lumbar herniated disc; osteoarthritis of the knees and left shoulder; bilateral carpal tunnel syndrome, status-post surgery; bilateral hammer toes, status-post surgery; and depression"; (4) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

1

(5) has the residual functional capacity to perform light work, except that she "is limited to frequent foot control operations with both lower extremities; can never climb ladders, ropes and scaffolds; is further restricted to simple, routine, repetitive tasks; and is limited to occasional fine and gross hand manipulations, bilaterally"; (6) is unable to perform any past relevant work; (7) was a younger individual age 18-49 on the alleged disability onset date; and (8) has at least a high school education and is able to communicate in English.  The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ramos is not disabled, regardless of the transferable job skills.  Considering Ramos's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Ramos can perform, such as usher, counter clerk and bus monitor.  In considering opinion evidence, the ALJ accorded some weight to the opinion of a consultative psychologist Leslie Helprin, PhD ("Dr. Helprin") because: (i) the terms marked and moderate were not "precisely defined by the physician"; (ii) it is not consistent with Dr. Helprin's clinical observations; (iii) it was based on a one-time examination; and  (iv) it is not consistent with "contemporaneous or subsequent treating medical evidence over the following two years."  The ALJ gave some weight to the opinion of a treating psychiatrist, Dr. Thandar Win ("Dr. Win"), who diagnosed Ramos with dysthymic disorder but indicated by completing a check-off form that Ramos is otherwise capable of unskilled work, because it does not provide a clinical basis for his finding that Ramos's "mental conditions would so severely interfere with attention, concentration and memory; would so severely limit her ability to interact with other individuals; or would necessitate so many absences."  Similarly, the severe mental restrictions indicated by social worker Jean Ann Weinstein in the May 2018 medical source statement "are not supported by any

specific clinical findings and are inconsistent with progress notes which show a large range of intact mental functioning with treatment." The ALJ accorded minimal weight to a state-agency psychologist M. Momot-Baker's opinion indicating mild to moderate restrictions in mental functioning because it does not indicate that the psychologist examined Ramos. The ALJ gave little weight to the opinion of a treating physician, physical medicine and rehabilitation specialist Dr. Barry Scheinfeld that Ramos "could perform the exertional requirements for less than the full range of light work in that she could lift and carry up to 20 pounds occasionally, but could sit up to 2 hours and stand or walk less than 2 hours each in an eight hour workday," and has an "inability for postural functions including the ability to stop crouch or climb stairs" because: (1) "it was completed in a check-off form with no supporting rationale"; and (2) it was "inconsistent with his own progress notes, which show no significant neurological or gait deficit or muscle atrophy and only conservative treatment." The ALJ concluded that Ramos has not been under a disability from June 29, 2015, through the date of the decision. The ALJ's decision became final when the Appeals Council denied review on September 19, 2019.

The parties made motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On March 9, 2020, Ramos filed a second application for disability benefits alleging a disability onset date of July 7, 2015. Ramos received a Notice of Award dated November 13, 2020, finding that she became disabled on September 19, 2019. Before the Court is Ramos's motion for remand of the matter to the Commissioner under sentence six, 42 U.S.C. § 405(g), opposed by the Commissioner.

## MOTION FOR REMAND UNDER SENTENCE SIX

Ramos asserts that the evidence of treatment, including her mental health treatment in 2019-2020 at Sullivan County Community Health Services, proffered in support of the motion, is

new, material, probative and not cumulative.  According to Ramos, new evidence undermines the basis on which the ALJ rejected the opinion of her treating psychiatrist Dr. Win, namely, that Ramos "was capable of addressing many of her life stressors," had beneficial relationships with family members and her fiancé, was able to attend physician's appointments consistently, as well as the lack of a clinical basis for Dr. Win's opinion.  According to Ramos, "records from Garnet Health showed that she missed many of her appointments," her relationship with her fiancé was fraught, and she had no access to transportation because she had broken up with him.  Moreover,

> her history of sexual abuse, or addiction, and three prior attempts at suicide is more clearly reflected in her treatment records in 2019 and 2020.  It was noted in Dr. Helprin's report, but not clearly in records reflecting Dr. Win's treatment.  There is a reasonable possibility that it would have affected the ALJ's decision had it been present in that record.

New evidence also clarifies the record evidence for the purpose of evaluating whether Ramos's impairments met or equaled the Listings of Impairments, the consistency of her statements with the record evidence and her residual functional capacity.  Ramos contends:

> In our opening brief we argued that the ALJ erred in failing to evaluate her impairment under listing 12.15, and also that the ALJ erred in evaluating her impairment under listing 12.06.  The evidence in the initial evaluation by Sullivan County Community Services and subsequent evidence in therapy sessions adds a dimension to the evidence which was not present in the administrative records submitted by defendant's counsel. The two listings are structured differently. Under listing 12.15 she met both the A and B criteria, and the A and C criteria.  The proffered evidence clearly illuminates the earlier evidence provided by the consultative examiner, and is not cumulative.

Moreover, additional evidence proffered in support of the motion, including the February 3, 2020 magnetic resonance imaging ("MRI") showing a "tear of the labrum in her left shoulder versus tendinitis, hypertrophy of the AC joint, a tear in her biceps, and bursitis," the May 19, 2020 MRI of the right knee showing "osteoarthritis and swelling," the June 2, 2020 steroid injection in the right knee and a release of the carpal tunnel syndrome in the right, dominant wrist, the June 20,

4

2020 MRI of the left shoulder showing "a partial tear of two tendons and three parts of the labrum," and the July 2020 lowering of her Hydroxyzine dosage due to anxiety, provides evidence about the pain in Ramos's shoulder, difficulty in using her hands for gross and fine manipulation and the surgeries during this period for each of these specific ailments. That evidence is also new and not cumulative, warranting remand.

## COMMISSIONER'S OPPOSITION TO THE MOTION

The Commissioner argues that: (1) "remand for consideration of additional evidence is not warranted"; (2) "the proffered evidence does not relate to the period at issue"; and (3) "there is no reasonable possibility that the proffered evidence would influence the ALJ to decide the application differently." According to the Commissioner, all evidence presented by Ramos post-dates the ALJ's decision and is not material because it does not relate to her condition during the time period for which benefits were denied, and it does not show a reasonable possibility of changing the ALJ's decision, based on more than 3,000 pages of medical evidence in the record before the ALJ. The Commissioner contends:

> As an initial matter, the newly submitted records simply do not reflect symptoms or limitations that are significantly more severe than those shown in the records reviewed by the ALJ. Compare Pl. Aff. Atts. 2-9, with Tr. 19-20, 23-25; Def. Br. at 11-18. The MSEs in the newly submitted records are largely unremarkable, and the records contain repeated notations that Plaintiff was stable while on medications. Pl. Aff. Att. 2, at 3; Pl. Aff. Att. 3, at 1, 13; Pl. Aff. Att. 4, at 2; Pl. Aff. Att. 5, at 2, 6, 8-9, 11-12; Pl. Aff. Att. 6, at 2, 5, 7-8; Pl. Aff. Att. 7, at 8, 11; Pl. Aff. Att. 8, at 2, 5, 9, 12; Pl. Aff. Att. 9, at 2. Of course, the records also reflect symptoms indicative of mental impairment, including irritability, depression, and anxiety, see generally Pl. Aff. Atts. 2-9—but so did the records before the ALJ. See Tr. 19-20, 23-25; Def. Br. at 11-18. And even if Plaintiff were able to identify symptoms or observations in the proffered records that signal greater severity than do the contents of the evidence considered by the ALJ, there would be no reason to assume that such symptoms or limitations were present during the relevant period, especially in light of the ample contemporaneous evidence documenting Plaintiff's condition during that earlier time. . . . Plaintiff notes that the newly submitted records, unlike the records before the ALJ, reflect a diagnosis of posttraumatic

stress disorder ("PTSD") beginning in February 2019, but nothing in the proffered records states that Plaintiff had PTSD during the time period considered by the ALJ.

Similarly, no basis exists to conclude that the results of an MRI performed on Ramos's right shoulder in February 2020, or the records of two treatment visits in August and September 2020 relate to the period adjudicated by the ALJ, given they were performed after the relevant period concluded.

The Commissioner asserts that, "the unremarkable mental status examinations contained in the new records are similar to, and reflect no findings more serious than, those in the records reviewed by the ALJ," and "the symptoms shown in the proffered records are largely cumulative of those manifested in the records reviewed by the ALJ (e.g., insomnia, depression, anxiety, anger, irritability, cutting hair)." Moreover, the record before the ALJ "reflected discord with her fiancé and others as well." Ramos failed to identify information in the proffered records demonstrating that her limitations are greater than those found by the ALJ. For example, Ramos asserts that the new evidence reflects a diagnosis of PTSD but fails to distinguish anything in the 2019 or 2020 records suggesting particular PTSD-related symptoms or limitations that might have influenced the ALJ to analyze her condition differently. Except for Ramos's cursory reference to PTSD in a list of diagnoses, the new evidence does not show symptoms or observations that deviate materially from those in the record considered by the ALJ. Similarly, Ramos failed to show why additional details concerning years-old events would persuade the ALJ to reach a different conclusion about Ramos's work-related limitations during the relevant period. Ramos did not explain why she did not furnish timely her more detailed psychiatric history she now proffers. According to the Commissioner, Ramos's suggestion that the new evidence would influence the ALJ's analysis of the listing and the opinion evidence is meritless

6

because she "failed to identify any specific, substantive medical information reflected in the proffered records that differs from the medical evidence reviewed by the ALJ to the extent that it would alter the ALJ's analyses and conclusions," given that "substantial evidence supports the ALJ's conclusion that Plaintiff did not sustain her burden to establish either the B or C criteria of Listing 12.04, and that alone prevents her from meeting or equaling Listing 12.15."  Moreover, no basis exists "to conclude that the MRI results or the 6 pages of visit notes from Dr. [Charles William] Episalla would have influenced the ALJ to decide Plaintiff's application differently."

## PLAINTIFF'S REPLY

Ramos asserts that the new evidence is relevant to her condition during the relevant period and probative, and it was evaluated under the "Revisions to the Rules Regarding the Evaluation of Medical Evidence," not under the treating physician rule.  The new evidence shows "three suicide attempts when she was 16, 17, and 23" and supports Dr. Helprin's diagnosis "of an unspecified amnestic disorder, Bipolar II disorder, and an unspecified anxiety disorder."  Ramos contends with respect to the new evidence:

> For his part, Dr. [Nambi] Salgunan diagnosed a Major Depressive Disorder, Recurrent (unspecified, and Post Traumatic Stress Disorder (chronic). Appx 2, p 13 His evaluation and those of two LCSW's sheds considerable light on the severity and continuity of impairments existing during the period evaluated by the ALJ.  The evidence of three prior suicide attempts illustrates the chronicity and intensity of her depression The proffered evidence strongly suggests that Ms. Ramos condition was far more serious than previously thought. The new evidence in Appx 2, p2 notes the presenting problems about chronic depression (since age 6/7) three suicidal attempts at 16, 17, and 23, and short-term memory deficits.  See Appx 2 p. 1-2; Appx 4 p 1, Pollard, Id.. at 194; Lisa, Id. at 44 Dr. Salgunan's evaluation in Appx 2, pp11-12, and Appx 4 p1 shows that she blocked out a lot of memories to finish college. She continued obsessive compulsive behavior (cutting hair) to make her feel better about her past Appx 2, p12.   It would reasonably and likely to have changed the outcome of the case. It supported her contentions in her first application.

Ramos contends that the ALJ failed to develop evidence of PTSD as reflected in the suicide attempts, and the initial investigator only sought evidence for a short period of time before the filing date.  Dr. Win could have provided the initial evaluation if asked.  Dr. Helprin's diagnosis of an unspecified amnesic disorder is uncontradicted and explains why Ramos might not have related to Dr. Helprin the fact that she attempted suicide three times as a teenager and in her twenties.  Dr. Helprin's diagnosis of an unspecified anxiety disorder and amnestic disorder "fits the diagnosis in DSM IV on the basis of DSM V, 20 C.F.R. § 404.1525," and Ramos reported the underlying facts with reasonable promptness.  Ramos maintains that "the ALJ misunderstood the fact that Dr. Helprin didn't know the meaning of these terms 'Marked' and 'Moderate' limitations in memory and maintain a regular schedule, and in dealing with stress due to depression, and that it may significantly interfere with claimant's ability to function on a daily basis."  The ALJ either misunderstood or "cherry picked" the evidence, and the ALJ may not cite selectively treating notes or diagnostic imaging supportive of the ALJ's findings while failing to address other evidence.  In evaluating a listing, the ALJ did not evaluate whether two marked impairments "call for a finding of 'disability.'"  Furthermore, the new evidence regarding Ramos's absences at therapy sessions supports Dr. Helprin's opinion about her inability to maintain a regular schedule due to depression compounding her medical issues.  Ramos contends that the excess pages in the record before the ALJ is a result of the requirement that each time Ramos attended the Catskill Regional Health Center for treatment, "they generated four pages of identifying information and past history compared to the four pages that actually referred to the treatment provided."  Thus, the excessive pages in the record "signified nothing."  Contrary to the ALJ's finding about a "beneficial relationship" between Ramos and her fiancé, the new evidence shows that the relationship was broken.

## LEGAL STANDARD

Sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

New evidence is "material" if it is both (1) "relevant to the claimant's condition during the time period for which benefits were denied" and (2) "probative." *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988) (internal quotation marks omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.*

Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004).

In addition to showing that evidence is new and material, the claimant must show "good cause for her failure to present the evidence earlier." Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S., 940 F.2d 40, 43 (2d Cir. 1991) (citation omitted).

"[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [*i.e.,* insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." *Gold v. Secretary of Health, Educ. and Welfare,* 463 F.2d 38, 41–42 (2d Cir.1972) (quoting *Carnevale v. Gardner,* 393 F.2d 889, 890 (2d Cir.1968)); *see also Eiden v. Secretary of Health, Educ. & Welfare,* 616 F.2d 63, 65 (2d Cir.1980). More particularly, we have determined that when . . . a diagnosis emerges after the close of administrative proceedings that "sheds considerable new light on the seriousness of [a claimant's] condition," evidence of that diagnosis is material and justifies remand. *See Tolany,* 756 F.2d at 272 (remanding for Secretary to consider medical report supplying new diagnosis); *see also Wagner v. Secretary of Health & Human Servs.,* 906 F.2d 856

9

(2d Cir.1990) (reversing Secretary for failing to give appropriate weight to retrospective diagnosis for consideration of which this court had previously remanded); *Tirado,* 842 F.2d at 597 (recognizing possibility that retrospective diagnosis may reveal depth of illness existing but not fully appreciated at time of prior hearing, and remanding to district court to determine in first instance whether evidence should be presented to Secretary).

Id. at 44.

## APPLICATION OF LEGAL STANDARD

Upon review of the evidence submitted in support of the motion for remand under sentence six and the parties' respective arguments in support and against the motion for remand, the Court finds the proffered evidence to be material and new, not cumulative. Although evidence in support of the motion postdates the ALJ's decision, some of the evidence predates the September 19, 2019 Appeals Council's denial of review, which coincided with the date on which Ramos was determined, based on her second application for disability benefits, to have become disabled. Evidence reflecting Ramos's treatment for depression and post-traumatic stress disorder, a shoulder surgery, carpal tunnel surgery, mental health treatment from a new provider, Sullivan County Community Health Services, beginning in 2019, as well as Ramos's complaints of various symptoms related to her medical condition, medication and activities of daily living, undermine the bases on which the ALJ: (i) evaluated medical opinions, including rejecting the opinions of Ramos' treating physicians; and (ii) assessed the record in evaluating whether Ramos's impairments met or equaled the Listings of Impairments. For example, a different provider diagnosed post-traumatic stress disorder in Ramos's initial treatment plan and sought to develop coping strategies with her stressors, but the administrative record does not contain an initial evaluation. Thus, new evidence appears to clarify the administrative record for the purposes of evaluating whether Ramos's impairments met or equaled the Listings of Impairments, the consistency of her statements with the record and her residual functional

10

capacity.  Moreover, the circumstances of Ramos's relationship with her fiancé and her alienation and fear of him are reflected in the evidence and suggest a material impact on Ramos's relationship with supervisors and co-workers.  Since a substantial loss of mental ability, including any of "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting," to perform basic work-related activities would "severely limit potential occupational base," Social Security Ruling 85-15 (1985), new and material evidence undermines the ALJ's finding that Ramos has the ability to perform work-related activities.  The number of pages alone contained in the ALJ's record does not show that the new evidence is cumulative or immaterial.  As the evidence post-dates the ALJ's decision, Ramos established good cause for failing to present it to the ALJ.  In light of the new material evidence, the Court finds that remand to the Commissioner is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiff's motion for remand to the Commissioner under sentence six of 42 U.S.C. § 405(g), Docket Entry No. 39, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Any requests for an extension of time for filing objections must be directed to Judge Analisa Torres.  ***Failure to file objections within fourteen***

***(14) days will result in a waiver of objections and will preclude appellate review.*** <u>See</u> <u>Thomas</u>

<u>v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Cephas v. Nash</u>, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
            March 12, 2021

Respectfully submitted,

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE